UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SERGEY SHTILMAN,

                        Plaintiff,

-against-

MARVAT MAKRAM; CORRECTION OFFICER
SCOTT PARKS; SGT. WILLIAM F. HAAS; LT.
STEVEN KATZ; NURSE JANICE DEFRANK;
ROBERT F. CUNNINGHAM,
SUPERINTENDENT; SGT. K. GORMSLEY;
CORRECTION OFFICER HOWE; DEPUTY AMY
TITUS, D.S.P.; and SUPERINTENDENT
CRONYN,

                        Defendants.

14-cv-6589 (NSR)

OPINION AND ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Sergey Shtilman ("Plaintiff"), proceeding *pro se*, commenced this action on August 18, 2014 and amended her[1] pleadings three times thereafter, ultimately filing her Fourth Amended Complaint (the "FAC") on September 2, 2016. (*See* ECF No. 25.) Plaintiff's case is asserted pursuant to 42 U.S.C. § 1983 for alleged Fourth, Eighth, and Fourteenth Amendment violations against Defendants Dr. Marvart Makram ("Makram"), Correction Officer Scott Parks ("Parks"), Sergeant William F. Haas ("Haas"), Lieutenant Steven Katz ("Katz"), Janice DeFrank ("DeFrank"), Robert F. Cunningham, former Superintendent at Woodebourne Correctional Facility ("Cunningham"), Sergeant K. Gormsley ("Gormsley"), Correction Officer Howe ("Howe"), Deputy Amy Titus, D.S.P. ("Titus"), and Superintendent Cronyn ("Cronyn") (collectively, the "Defendants").

---

[1] Plaintiff self-identifies as a transgender female and has been incarcerated in various male prisons within the state of New York. (*See* ECF No. 25 at 1.)

1

Predominantly, Plaintiff's FAC alleges that the Defendants harassed her, insulted her, and were biased against her. Presently before the Court is Defendants' motion to dismiss the FAC for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendants' Motion"). (*See* Defendants' Brief in Support of their Motion to Dismiss ("Def. Br.") (ECF No. 48).)[2] For the following reasons, Defendants' Motion is GRANTED.[3]

## FACTUAL BACKGROUND

Plaintiff is currently incarcerated at Elmira Correctional Facility. The incidents central to her FAC occurred between June 2014 and November 2015 at Woodbourne Correctional Facility ("Woodbourne") and Groveland Correctional Facility ("Groveland"). (*See* FAC at 1-3.)[4] The following facts are drawn from Plaintiff's FAC and the documents attached thereto and are accepted as true for purposes of this motion.[5]

### I. Woodbourne

Shortly after Plaintiff was transferred to Woodbourne, in June of 2014, Makram began altering Plaintiff's medical documents. (*See* FAC at 1.) Makram also told Plaintiff "to die [and

---

[2] Defendants' Motion was scheduled to be fully submitted by June 14, 2017. (*See* ECF No. 46.) Prior to that date, on May 30, 2017, Plaintiff drafted two documents, an "affidavit in opposition/order to show cause" and one regarding "additional information and/or evidence". (*See* ECF Nos. 51-52.) These documents were not entered on the docket until June 16, 2017, after Defendants file their motion papers on June 14, 2017, under the apparent assumption that the motion was unopposed. (*See* ECF Nos. 48-50.) Defendants were granted an extension of time to address Plaintiff's May 30th documents and file their reply on or before June 30, 2018. (*See* ECF No. 53.) Approximately three months after Defendants filed their reply, (ECF No. 54), Plaintiff filed a "declaration in opposition to Defendants' motion", (ECF No. 57.) Plaintiff thereafter requested leave to file an opposition to Defendants' Motion by letter dated January 8, 2018. (*See* ECF No. 66.) By Order dated January 25, 2018, this Court directed Plaintiff to file a formal opposition to Defendants' Motion on or before February 20, 2018, or risk her previous May 2017 letters being deemed her opposition. (*See* ECF No. 67.) Plaintiff filed an opposition on February 20, 2018. (*See* ECF No. 69.) Defendants' Reply thereto was filed on March 2, 2018, (*see* ECF No. 70), and this Court now deems the motion fully submitted. In light of the foregoing, in resolution of this motion, the Court will consider the Defendants' original moving papers, (ECF Nos. 48-49), Plaintiff's February Opposition, (ECF No. 69), and Defendants' Reply thereto, (ECF No. 70), only.
[3] In filing her Opposition, Plaintiff also filed a document styled "notice of motion", (*see* ECF No. 68), though Plaintiff is not seeking relief apart from an Order denying Defendants' Motion. Accordingly, the Clerk of the Court will also be asked to terminate that motion as well.
[4] As Plaintiff is proceeding *pro se* and her FAC is a self-created document, all citations thereto will be to pages as delineated on ECF, not paragraphs
[5] The Court assumes the truth of the facts alleged in Plaintiff's Complaint for purposes of this motion only, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and considers documents which are either incorporated by reference or integral to

2

that] the world w[ould] be way better-off [sic] without [Plaintiff], transsexual doll b----c----." (*Id.*) Makram then "refused to help a sick person" and picked and chose "which patients she want[ed] to help, and which ones she want[ed] to suffer . . . ." (*Id.*) She also refused to provide medical attention to an officer who was having a heart attack in the Special Housing Unit. (*Id.*)

The following month, when Plaintiff arrived at the School building at Woodbourne, she was asked to "submit to a routine pat-frisk" by Parks while Haas observed. (*Id.*) "Parks waited [until] nobody was present . . . and in concert with Sgt. Haas they nearly stuck their fingers with gloves-on—between [Plaintiff's] buttcheeks [sic]." (*Id.*) Plaintiff was clothed at the time. (*Id.*) Thereafter, Plaintiff's commissary and snacks, as well as 10 stamps, were "confiscated and destroyed without . . . reason but harassment and mockery only." (*Id.*) They then told Plaintiff to "take [her] punishment like a man" and called her a "she-male transsexual b----c---." (*Id.*)

Also in July of 2014, Plaintiff went to sick call and was seen by DeFrank to address her "problems, among which was a feed-up request." (*Id.* at 2.) DeFrank was "drunk and smelled like alcohol" while on duty. (*Id.*) DeFrank also grew agitated with Plaintiff and "cursed [her] out-without trying to even help the sick person." (*Id.*)

In September of 2014, Plaintiff had a Tier II Hearing[6] over which Katz presided. (*Id.* at 2.) His determination was allegedly arbitrary & capricious, and thereafter, off the record, he made harassing remarks and threats to Plaintiff.[7] (*Id.*) Specifically, Katz said that "if it was up to

---

the claims asserted therein. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[6] A Tier II hearing is provided for in the New York Code, Rules and Regulations. *See* N.Y.C.R.R. § 270.3(a)(2). Such a hearing reviews the charges outlined in a misbehavior report and permits a hearing officer to levy penalities, but is less serious than a Tier III, Superintendent's hearing. Possible penalties resulting from a Tier II hearing include: counsel or reprimand; loss of a specified privilege for no more than 30 days; confinement to a cell or room, the Special Housing Unit, or confinement for certain hours and/or days, not to exceed 30 days; restitution; or imposition of an additional work task per day for no longer than seven days. *See* N.Y.C.R.R. § 253.7(a)(1).

[7] Plaintiff does not identify what the subject of the Tier II Hearing was, what the outcome was, or how Katz's determination was arbitrary and capricious.

3

[him]—[he] would let all retarded transgenders be burned in Auschwitz furnaces—never mind [him] . . . being a Jew." (*Id.*) Katz then claimed that he also "hate[d] the Jews . . .[that] Hitler was right." (*Id.*) He thereafter referred to Plaintiff as "Shitman", and asked why she was "anti-system, anti-nazi, and – such a fighter for [her] scumbag-self." (*Id.*) He also told Plaintiff that she "should just f----g die," as there would be "one-less mental health retarded b----c--- to worry about." (*Id.*)

Over a year later, on October 13, 2015, Howe and Gormsley conducted a search of Plaintiff's cell. (*Id.*) Before doing so, Gormsley said to Plaintiff, "[y]ou, Russian she-male b---c---- . . . [w]hy won't you do some sexual favors to some [o]fficers here . . . . [or] maybe you can [f]--- one of us[] [g]uards[] up—so we can go on a niice [sic] paid-vacation-and you, transsexual c--- . . . will go to the box." (*Id.*) Gormsley then threatened Plaintiff's family and told Howe to "[f]--- with this shemale Russia/Cindy . . . as much as you possibly can." (*Id.*) Howe then proceeded to perform the cell search, "turned [Plaintiff's] room/cell upside down", and confiscated a number of Plaintiff's family albums. (*Id.*) Howe then threatened to hurt Plaintiff and told her that he had "better see some sexual things for favors—going-on there", if she wanted to "be a good trans-woman." (*Id.* at 3.)

On a separate occasion in November of 2015, Gormsley told Plaintiff that he would "bury" her if she kept bringing lawsuits against him and told her that she was "a rat, a cop." (*Id.*) Three months later, Plaintiff was transferred to another facility and claims that "in every last one of them medium prisons . . . [she] always had been [sic] having same problems [sic] . . . [of] harassment, threats, intimidation, [and sexual] harassment." (*Id.* (capitalization removed).)

II. <u>Groveland</u>

While at Groveland, Plaintiff alleges that her requests for feed-up and other "medical restrictions" were granted by Dr. Paul Dippert. (*Id.* at 3.) Shortly thereafter, however, Titus,

4

Deputy Superintendent for Programs, began yelling at Dippert and threatened him "with 'early retirement and possible suspension for being so compassionate to Sergey Shtilman and others like her/him." (*Id.*) The records, however, demonstrate that Plaintiff requested feed-ups on June 14, 2016 because she was "very paranoid in [the] messhall" and could not eat. (*Id.* at 5.)[8] Dr. Dippert's comments indicated that Plaintiff had no functional limitations and thus did not need feed-ups. (*Id.*) Consequently, Titus denied the request for a reasonable accommodation on June 27, 2016 and relied upon Dippert's recommendation in making her decision. (*Id.*)

### III. Other

Plaintiff otherwise alleges general claims against both Cunningham and Cronyn. Specifically, Cunningham, former Superintendent at Woodbourne, "was always covering-up all the wrongdoers—but never was being on the victims' side." (FAC at 2 (capitalization removed).) Cunningham was transferred to Fishkill Correctional Facility ("Fishkill") in late 2015 where an inmate was later killed. (*Id.*) Cronyn too was a Superintendent at Woodbourne who was "never trying to even help the victims of harassment and wrongdoing." (*Id.* at 3 (capitalization removed).)[9]

### LEGAL STANDARD

### I. 12(b)(6)

To withstand a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[8] Attached to Plaintiff's FAC are copies of her requests for reasonable accommodations and her records from sick call at Groveland. As the documents are not identified as exhibits, citations thereto will reflect the pages on ECF.

[9] In her request for relief, Plaintiff asks that this Court release her from incarceration. In light of Defendant's argument that the Court is without authority to do so and Plaintiff's acknowledgement thereof, in her Opposition, Plaintiff withdrew this request for relief. (*See* Plaintiff's Brief in Opposition to Defendants' Motion ("Plf. Br.") (ECF No. 69) at 5-6.)

Critically, the plaintiff must plead sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.

Courts are required to construe *pro se* pleadings in a particularly liberal fashion, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them "to raise the strongest arguments that they suggest," *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I. Fourth Amendment

Plaintiff's attempts to allege that the searches of his cell were unreasonable, in violation of the Fourth Amendment, must be dismissed. Inmates have no reasonable expectation of privacy in their prison cell; as such, a search would not violate the Fourth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Instead, prisoners may avail themselves of the Eighth Amendment, as the unavailability of Fourth Amendment protections does not "mean that prison attendants can ride roughshod over inmates' property rights with impunity." *Id.*

### II. Eighth Amendment

Plaintiff appears to allege three separate claims under the Eighth Amendment: deliberate indifference to medical needs; (2) sexual assault; and (3) an improper cell search. None can withstand this motion to dismiss.

6

To make out any Eighth Amendment claim, a Plaintiff must "satisfy a two-prong test with both objective and subjective components." *Banks v. William*, No. 11-CV-8667(GBD)(JLC), 2012 WL 4761502, at *3 (S.D.N.Y. Sept. 27, 2012), *report and recommendation adopted by* 2013 WL 764768 (Feb. 28, 2013).

A. **Deliberate Indifference to Medical Needs**

Plaintiff's attempts to allege deliberate indifference to medical needs against Defendants Makram, DeFrank, and Titus must be dismissed. It is axiomatic that such claims require pleading defendants' "deliberate indifference to [Plaintiff's] serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("*Hathaway II*") (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (alterations omitted). To do so, Plaintiff must plead both that the deprivation is "in objective terms, sufficiently serious", *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted), and that the prison official acted with "a sufficiently culpable state of mind," *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), in that the official "must know of and disregard an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff's wholly conclusory allegations fail to meet this standard.

Construed liberally, the claims against Makram and DeFrank arise from a categorical denial of medical treatment; however, Plaintiff fails to allege entirely what her medical condition was, or how it was sufficiently serious. Without such allegations, the Court cannot assess the sufficiency of her pleadings. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (courts must assess whether the "medical condition is sufficiently serious" with respect to categorical denials of treatment); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 505 (S.D.N.Y 2012)

7

(dismissing medical claim where plaintiff did not "identify even the medical need allegedly disregarded"). Even if Plaintiff had alleged the nature of her medical need, the claims would still fail, as there are no facts reflecting the decisions made by the medical providers or how they were deliberately indifferent to Plaintiff's needs.

Insofar as Plaintiff is attempting to allege that Titus interfered with her medical needs, such a claim also fails. As noted above, Plaintiff fails to allege any medical need whatsoever. Moreover, Plaintiff's allegations against Titus are contradicted by the documents attached to the FAC and are thus not entitled to be accepted as true. *See Rapoport v. Asia Elec. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (noting that where documents attached to the complaint contradict allegations contained therein, documents control). Here, Plaintiff's allegations can be construed as a claim that Titus interfered with Plaintiff's request for a feed-up pass after she was shown the passes provided to Plaintiff by Dr. Dippert. (*See* FAC at 3.) The requests Plaintiff made for feed-up passes, which were ultimately denied by Titus on recommendation by Dr. Dippert, contradict those allegations. (*See id.* at 5.) These documents demonstrate that Dr. Dippert never could have drafted passes without Titus' approval; as such, Plaintiff's allegation that Titus threatened Dr. Dippert after seeing already approved passes cannot hold water.

### B. Sexual Assault

Sexual abuse "by a corrections officer can give rise to an Eighth Amendment claim," *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (citing *Boddie v. Schnieder*, 105 F.3d 857, 859 (2d Cir. 1997)) ("*Crawford I*"), and is violative of the Constitution when the alleged conduct "serves no penological purpose *and* is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate," *id.* (emphasis added.) Even a "single incident of sexual abuse, if sufficiently severe or serious, may violate" the inmate's rights. *Id.* The critical inquiry "is whether

the contact is incidental to legitimate official duties, such as a justifiable pat-frisk or strip search, or by contrast whether it was taken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 257 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Plaintiff's facts, analyzed even under *Crawford I*, fail.[10]

Preliminarily, Plaintiff alleges that the pat-frisk was "routine". (*See* FAC at 1.) Moreover, Plaintiff alleges that the officers "nearly stuck their fingers ... between [Plaintiff's] buttcheeks [sic]", (*id.*), but did not actually do so, indicating that the contact was likely incidental to a routine pat-frisk. Consequently, even under the *Crawford I* standard, as a matter of law, there would be no cognizable Eighth Amendment clam, as the conduct is not sufficiently serious. *See Crawford I*, 796 F.3d at 257-58.

Even if this conduct rose to the level of a *Crawford I*, violation, in light of the fact that the alleged sexual assault occurred before *Crawford I* expanded the definition of conduct which violated the Eighth Amendment, the critical inquiry for this Court is whether the conduct would have been cognizable under *Boddie*, and whether the Defendants are entitled to qualified immunity. It does not and they are.

*Boddie* held that, although sexual abuse "could, in principle, violate the Eighth Amendment ... [only] a 'small number of incidents in which the plaintiff allegedly was verbally harassed, touched, and pressed against without his consent were sufficient to state a claim." *Crawford v. Cuomo*, 721 F. App'x 57, 59 (2d Cir. 2018) (summary order) (*"Crawford II"*). A single incident, as here, where the officers "nearly stuck their fingers" between Plaintiff's butt cheeks would not rise to the level of an Eighth Amendment violation under *Boddie*. *See Crawford I*, 796 F.3d at 257 (reiterating that in *Boddie* the Second Circuit "concluded that no single incident

---

[10] *Crawford I* was decided after the conduct alleged in Plaintiff's FAC occurred.

9

was sufficiently serious"); *see also Boddie*, 105 F.3d at 859-6 (finding no Constitutional violation where corrections officer made a pass at plaintiff, touched his penis, and called him a "sexy black devil"). Consequently, Haas and Parks are entitled to qualified immunity, because at the time, "existing precedent [did not] place[] the [] constitutional question beyond debate," *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam); *see also Crawford II*, 721 F. App'x at 60 (affirming grant of qualified immunity to Defendants whose conduct would not have violated the Eighth Amendment pre-*Crawford I*); *see also McCray v. City of Albany*, No. 13-CV-949(A), 2016 WL 11259018, at *7 (W.D.N.Y. Apr. 6, 2016) (acknowledging that conduct occurring prior to *Crawford I* should be reviewed under *Boddie's* standard).

C.   **Cell Search**

The Eighth Amendment limits cell searches conducted in prison. *See Hudson*, 468 U.S. at 529. An inmate can recover under the Eighth Amendment if she demonstrates that the search amounted to cruel and unusual punishment, "which is to say, if the cell search lacked any legitimate penological interest and was intended solely to harass." *Jones v. Harris*, 665 F. Supp. 2d 384, 395 (S.D.N.Y. 2009). The prisoner must allege that "a defendant 'ordered the searches with the specific intent to cause plaintiff harm and that the searches in fact caused him harm." *Id.* Critically, "the deprivation . . . must be sufficiently serious in objective terms such that it suggests denial of the minimal civilized measure of life's necessities." *Id.*

Plaintiff's claims cannot withstand this motion to dismiss. The only harm Plaintiff alleges to have suffered as a result of his cell search was the confiscation and destruction of thirteen family books and albums. (*See* ECF No. 2.) Such harm is not legally recoverable; it is not sufficiently serious to be considered a denial of the minimal civilized measure of life's necessities. *See Vogelfang*, 889 F. Supp. 2d at 510 (denying cell search claim where pens confiscated); *see also*

*Little v. Municipal Corp.*, 51 F. Supp. 3d 473, 499 (S.D.N.Y. 2014) (deprivation of legal paperwork as result of search insufficient). Moreover, assuming Plaintiff attempted to allege a type of harm other than the deprivation of property, a single search is insufficient to demonstrate that the conduct was "so much a departure from the norm as to be greater than a *de minimis* disruption," *Jones*, 665 F. Supp. 2d at 395 (claim based on three cell searches over a span of six weeks dismissed), even in light of the allegations reflecting an intent to harass Plaintiff, *see Mateo v. Bristow*, No. 12-CV-5052(RJS), 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (dismissing claim even where subjective intent met when only one search occurred). Claims against Howe and Gormsley for an improper cell search must therefore be dismissed with prejudice.

### III. Fourteenth Amendment

Plaintiff also appears to allege claims arising out of the Fourteenth Amendment's protection against violations of due process and equal protection.

#### A. Due Process

##### 1. *Disciplinary Hearing*

Plaintiff's allegations regarding the comments made by Katz, alone, fail to raise a cognizable claim for relief, as they amount to threats and verbal abuse, which are not constitutional violations, though despicable as they may be. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("mere allegations of verbal abuse, threats or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action"); *see also Holland v. City of New York*, 197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016); *Gotz v. Mastroeni*, 476 F. Supp. 2d 332, 382 (S.D.N.Y. 2007).[11]

---

[11] Such reasoning likewise applies to any claims Plaintiff is attempting to raise against Gormsley arising from November 2015 threats.

11

Though inmates have "limited due process rights at disciplinary hearings", *Peralta v. Vasquez*, No. 01-CV-3171(BSJ)(HBP), 2009 WL 750218, at *2 (S.D.N.Y. Mar. 20, 2009), they are entitled to an impartial hearing officer, *see Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nevertheless, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally," *id.*, and thus due process only requires "that the hearing officer's decision not be 'arbitrary,'" *Peralta*, 2009 WL 750218, at *2. Insofar as Plaintiff is attempting to state such a claim, it must fail as she has not provided any factual material regarding the nature or content of the disciplinary hearing or Katz's determination.

### 2. *Deprivation of Property*

To the extent Plaintiff is attempting to state claims for deprivation of property in violation of the Fourteenth Amendment against Parks, Haas, Gormsley, and Howe, such claims must also fail. Deprivation or destruction of property, even where intentionally done, is not cognizable under the Fourteenth Amendment where there are adequate state-provided post deprivation remedies. *See Hudson*, 468 U.S. at 536 (holding that intentional destruction "did not violate the Fourteenth Amendment"). "New York State . . . provides inmates with a post-deprivation remedy through the court of Claims." *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 361 (S.D.N.Y. 2010). As a matter of law, Plaintiff cannot state such a due process claim.[12]

### B. Equal Protection

Defendants appear to boil Plaintiff's FAC down to a series of events of harassment, name-calling, and profanity. While the Court largely agrees with this assessment, reading Plaintiff's

---

[12] Plaintiff cannot, as a matter of law, attempt to assert such a claim through the Eighth Amendment either. First, Plaintiff fails to demonstrate that the deprivation resulted in any injury, and even if she had, the deprivation of family albums, snacks, and stamps, does no amount "to a denial of 'the minimal civilized measure of life's necessities.'" *Bridgewater*, 698 F. Supp.2d at 361 (denying plaintiff's claims for property deprivation via the Eighth Amendment when "trimmer and headphones" were taken from him).

FAC liberally, and considering the allegations in her Opposition to supplement the FAC, *see Quinones v. City of New York*, No. 16-CV-0985(GBD)(DF), 2017 WL 1322205 at *4 (S.D.N.Y. Jan. 6, 2017) (collecting cases and noting that while some courts do not consider a *pro se* plaintiff's opposition allegations as a supplement to the complaint, such allegations can "offer clarification or context that can aid the Court in understanding the plaintiff's pleading...."), *report and recommendation adopted* 2017 WL 775851 (Feb. 28, 2017); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 645 n.11 (S.D.N.Y. 2016); *Sommersett v. City of New York*, No. 09-CV-5916(LTS), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011), it appears that Plaintiff is attempting to allege, though inartfully and insufficiently for purposes of the *Iqbal/Twombly* standard, a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment against Makram, Parks, Hass, Gormsley, and Howe, (*see* Plf. Br. at 1 (arguing "systematic and continuous infringement upon [Plaintiff's] rights of equal protection...."); *see also* FAC at 1-2 (referring to derogatory comments made regarding Plaintiff's gender-identity where treatment was denied or where searches were conducted)).[13]

The Equal Protection Clause of the Fourteenth Amendment holds that "[n]o State shall ... deny to any person within this jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Thus, the clause "is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneaonta*, 221 F.3d 329, 337 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted). To state a cognizable Equal Protection claim, a "plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (*citing Giano v. Senkowski*,

---

[13] Defendants do not address a potential claim for Equal Protection.

54 F.3d 1050, 1057 (2d Cir. 1995)). A plaintiff must also demonstrate that the conduct "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

There are three types of equal protection claims that can be asserted: (1) selective enforcement; (2) discriminatory intent; and (3) class of one. With respect to selective enforcement and discriminatory intent, Plaintiff cannot plead a cognizable claim. Both require a demonstration that "the conduct was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitution rights, or malicious or bad faith intent to injury a person." *Le Clair v. Saunders*, 627 F.2d 606, 609-10 (1980). Neither the Supreme Court nor the Second Circuit has identified transgender individuals as members of a protected class or held that discrimination against them constitutes sex-based discrimination. *See White v. City of New York*, 206 F. Supp. 920, 933 (S.D.N.Y. 2016) (citing *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009)). Plaintiff cannot avail herself of either claim. *See Roman v. Donelli*, 347 F. App'x 662, 662 (2d Cir. 2009) (summary order) (affirming dismissal of complaint that failed to allege membership in protected class).

If anything, Plaintiff's claims appear to fall within the "class of one" theory of Equal Protection. The class of one theory permits a plaintiff, not in a protected class, to state a cognizable claim if she establishes that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diag. Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010); *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To succeed on such a claim, a plaintiff must allege that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."

*Analytical Diag. Labs, Inc.*, 626 F.3d at 140. Such claims typically arise in situations where there are "discretionary decisions" that "involve discretion that is actually exercised on a day-to-day basis." *Id.* at 141.

With respect to Makram, Plaintiff appears to claim denial of medical treatment due to her gender-identity, though insufficient to pass muster on this motion to dismiss. Even construed liberally, Plaintiff's allegations that Makram is selective with her treatment of inmates along with Makram's comments about Plaintiff's gender-identity, fall short of properly alleging a claim for Equal Protection as they are wholly devoid of any facts pertaining to comparators or others similarly situated to Plaintiff that were not denied treatment, or facts bearing on the nature of Plaintiff's injuries, as held *infra* II.A., that would demonstrate Plaintiff was entitled to treatment but was denied it due to her gender-identity.

The allegations against Parks, Haas, Howe, and Gormsley are likewise deficient. Though such statements as "take your punishment like a man, you she-male transsexual b----c---" following a pat-frisk, (*see* FAC at 1), "Howe, [f]--- with this shemale Russia/Cindy . . . as much as you possibly can", preceding Howe's search of Plaintiff's cell, (*see id.* at 2), and if Plaintiff "want[ed] to be a good trans-woman . . . [then Howe had] better see some sexual things for favors . . . ," (*id.* at 3), reflect that Plaintiff's gender-identity may have played a role in the officers' decisions to search her cell and perform a pat-frisk, more is needed. Plaintiff fails to plead facts regarding comparators, how they were treated in comparison, and that there was no rational basis for the officers' conduct.

Consequently, to the extent the FAC attempts to plead an Equal Protection claim based on the class of one theory it fails, but Plaintiff will be granted leave to re-plead.

## IV. Personal Involvement

It is a well-settled tenet that proper pleading of any Section 1983 claim requires allegations demonstrating the personal involvement of each defendant in a constitutional violation *against* Plaintiff. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

Where, as here, the Plaintiff alleges that supervisory defendants should be held liable, a theory of respondeat superior will not do. *See Iqbal*, 556 U.S. at 676-77 (noting that "supervisory liability" is a misnomer that should not be confused with *respondeat superior*). To pass muster, a claim cannot rely on conclusory allegations of personal involvement. *See De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996); *Samuels*, 168 F. Supp. 3d at 636-37; *Holland*, 197 F. Supp. 3d at 550. Plaintiff's claims must fail because they are wholly conclusory and devoid of any factual matter that would bring Cunningham and Cronyn's conduct into the realm of any of the *Colon* factors,[14] and even so, such allegations fall far short of any potential deliberate indifference claim as they do not demonstrate that either knew "that inmates face a substantial risk

---

[14] The *Colon* factors permit a plaintiff to show personal involvement by demonstrating that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). This Court has already held that the *Colon* factors are still relevant in the personal involvement consideration. *Matteo v. Perez*, No. 16-CV-1837, 2017 WL 4217142, at *4 (S.D.N.Y. Sept. 19, 2017).

of serious harm and disregard[ed] that risk by failing to take reasonable measure to abate it." *Farmer*, 511 U.S. at 847.

Insofar as Plaintiff attempts to allege constitutional violations against Cunningham related to the death of a prisoner at Fishkill, such a claim fails for two reasons: (1) the claim does not relate to Plaintiff at all; and (3) nevertheless, Plaintiff failed to demonstrate Cunningham's personal involvement.

## V.     Eleventh Amendment Immunity

It is axiomatic that a state is immune from suit in federal court, absent abrogation by Congress. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-56 (1996); *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990). This immunity extends to agents and employees of DOCCS, as they are considered "arms of the state." *Dube*, 900 F.2d at 594-95; *see also Matteo v. Perez*, No. 16-CV-1837(NSR), 2017 WL 4217142, at *7 (S.D.N.Y. Sept. 19, 2017). Claims against state agents in their official capacity pursuant to Section 1983 are ripe for dismissal. *Matteo*, 2017 WL 4217142, at *7 (citing *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) and *Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) for proposition that Section 1983 claims

based on official capacity "barred by sovereign immunity"). Any and all claims against the Defendants in their official capacity are therefore dismissed with prejudice.

## VI. <u>Qualified Immunity</u>

The Court need not consider the qualified immunity of Defendants at this time, except as articulated, *infra* II.B. The Court is dismissing the entire FAC and granting Plaintiff leave to re-plead certain causes of action.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in its entirety and Plaintiff's FAC is dismissed. All of Plaintiff's claims are dismissed *with* prejudice, except where indicated below. The following are dismissed *without* prejudice and Plaintiff is granted leave to re-plead them in conformity with this Opinion and Order:

(1) Equal Protection claims based on the class of one theory against Makram, Parks, Haas, Gormsley, and Howe;

(2) Deliberate indifference claims, with the requisite facts regarding personal involvement, against Cronyn and Cunningham;

(3) Due process against Katz; and

(4) Deliberate indifference to serious medical needs against Makram and DeFrank.

To the extent Plaintiff seeks to re-plead the above listed claims, she must do so on or before September 7, 2018. Failure to do so will result in dismissal of these claims *with* prejudice. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coopedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion at ECF Nos. 48 and 68. The Clerk of the Court is also directed to mail a copy of this Opinion and Order to Plaintiff at her address as listed on ECF and show proof of service on the docket. The Clerk of the Court is also directed to terminate Defendant Deputy Amy Titus, D.S.P, as the FAC is dismissed against her with prejudice.

Dated: August 6, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge