UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___06/27/2022___
```

SERGEY SHTILMAN,

                              Plaintiff,

    -against-                                    No. 14 Civ. 6589 (NSR)
                                                 OPINION AND ORDER
MARVAT MAKRAM and ROBERT F.
CUNNINGHAM

                              Defendants.

NELSON S. ROMÁN, United States District Judge

    *Pro se* Plaintiff Sergey Shtilman ("Plaintiff") commenced this action against multiple correctional facility employees on August 18, 2014, pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged Fourth, Eighth, and Fourteenth Amendment violations. (*See* ECF No. 2.) Plaintiff subsequently amended her[1] pleadings four times. Plaintiff filed her Fifth Amended Complaint (the "5AC"), which is the operative complaint, on October 12, 2018. (*See* ECF No. 76.) In her 5AC, Plaintiff asserts Section 1983 claims against Defendants Dr. Mervat Makram ("Dr. Makram") and Robert Cunningham ("Cunningham"), former Superintendent at Woodbourne Correctional Facility (collectively, the "Defendants"). Specifically, Plaintiff alleges three claims: an Equal Protection claim against Dr. Makram and two deliberate indifference claims under the Eighth Amendment against Dr. Makram and Cunningham each. (*Id.* at 2.)

    Presently before the Court is Defendants' motion to dismiss Plaintiff's 5AC under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 93.) For the following reasons, Defendants' motion to dismiss is GRANTED.

---

[1] Plaintiff self-identifies as a transgender female and has been incarcerated in various male prisons within the state of New York. (*See* ECF No. 25 at 1.)

## BACKGROUND

### I.   Factual Background

Plaintiff was incarcerated at Elmira Correctional Facility, but was released on January 18, 2022, on parole and currently resides in Smallwood, New York. (*See* ECF No. 97.) The following facts are derived from Plaintiff's 5AC and the exhibits attached thereto. These facts are assumed to be true and construed in the light most favorable to the *pro se* Plaintiff for purposes of this motion.

The incidents referenced in her 5AC occurred when Plaintiff was incarcerated at Woodbourne Correctional Facility ("Woodbourne") between April 16, 2014, and January 1, 2016. (5AC ¶ 1.) On May 29, 2014, Plaintiff attended sick call requesting a feed-in cell permit given her neurogenic bladder disorder diagnosis and history of incontinence. (*Id.* ¶ 4.) Plaintiff provided a doctor's letter, dated March 30, 1993, confirming her medical condition. (*Id.* ¶ 5.) Woodbourne's medical staff denied the feed-in cell permit request, prompting Plaintiff to file a grievance on June 2, 2014. (*Id.* ¶¶ 6–7.) Woodbourne's Inmate Grievance Resolution Committee ("IGRC") denied the grievance and Plaintiff appealed this denial to Cunningham. (*Id.* ¶¶ 8–9.) Cunningham found that "there [was] no medical or psychological need for grievant to be fed in cell." (*Id.* ¶ 9.) Plaintiff appealed Cunningham's decision, which the Central Office Review Committee ("CORC") reviewed and denied. (*Id.*) As a result, Plaintiff was forced to choose between "missing numerous meals and remaining in her housing unit where a bathroom was readily available, or attending the mess hall and being subjected to painful humiliation and derision when embarrassing accidents occurred on account of her serious medical condition." (*Id.* ¶ 10.)

On August 14, 2014, Plaintiff went to sick call again and was seen by Dr. Makram. She requested a feed-in cell permit, but was again denied. (*Id.* ¶¶ 12–13.) Dr. Makram did not conduct

a proper evaluation of Plaintiff's prior diagnosis or her incontinence. (*Id.* ¶ 13.) Dr. Makram was "wholly unprofessional" toward Plaintiff. (*Id.* ¶ 14.) Dr. Makram became "impatient and angry" with Plaintiff's accented speech and made inappropriate comments regarding Plaintiff's gender identity. (*Id.* ¶¶ 14–15.) Specifically, Dr. Makram allegedly told Plaintiff:

> You transgender inmates believe that you are entitled to everything. Well, you are not! I'm the doctor here. This is my office, and I will decide who is provided what, and who isn't. Frankly, the world would be a better place if they packed you all up and shipped you off to your own prison to live or die. You will not get any special treatment from me because you're some sort of shemale.

(*Id.* ¶ 15.) Dr. Makram then refused: (1) to examine the medical or diagnostic history provided in Plaintiff's documentation; (2) to issue Plaintiff a feed-in cell permit or provide her with medical incontinence briefs or undergarments; and (3) to schedule any follow up examinations with a specialist for Plaintiff. (*Id.* ¶¶ 16–17.)

On August 18, 2014, Plaintiff filed a grievance pertaining to Dr. Makram's actions, which the IGRC and Cunningham denied. (*Id.* ¶ 18.) Plaintiff then submitted an appeal that the CORC unanimously accepted in part. However, the CORC rejected Plaintiff's claims related to Defendants' actions and indifference to her serious medical needs. (*Id.*)

Plaintiff contends that as a result of Defendants' actions and failure to recognize or make accommodations for her medical conditions, she suffered weight loss, severe anxiety, mental anguish and duress. (*Id.* ¶¶ 10, 19.) On September 17, 2015, Plaintiff filed another grievance raising these issues and reasserting the continued denial of a medically approved feed-in cell permit. (*Id.* ¶ 20.) She neither received a response nor a determination from the IGRC, Cunningham, or the CORC. (*Id.*) Plaintiff claims to have exhausted all administrative remedies available to her against Dr. Makram and Cunningham. (*Id.* ¶ 21.)

II.     **Procedural History**

On August 18, 2014, Plaintiff, proceeding *pro se*, initially commenced this action pursuant to Section 1983 alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights against several correctional facility officers. (ECF No. 2.) Plaintiff has since amended her pleadings four times. (ECF Nos. 6, 10, 11, 24, 76.)

On December 5, 2014, Plaintiff filed an Amended Complaint naming the Mid-State Correctional Facility and several employees at the Woodbourne Correctional Facility, including Dr. Makram and Cunningham, as Defendants. (ECF No. 6.) On December 24, 2014, the Court dismissed the Mid-State Correctional Facility because the claims against it had been severed and transferred to the Northern District of New York. (ECF No. 8.) The Court also issued a *Valentin* Order, directing the New York Office of the Attorney General to ascertain the identities of the unidentified Defendants and the addresses where each may be served. (ECF No. 8.)

On February 13, 2015, Plaintiff filed her Second and Third Amended Complaints, naming an additional correctional officer as a Defendant. (ECF Nos. 10, 11.) After all Defendants were identified by letters dated May 27 and June 8, 2015 (*see* ECF No. 16), pursuant to the *Valentin* Order, the Court directed Plaintiff to file her Fourth Amended Complaint on or before August 22, 2016. (ECF No. 22.)[2]

On September 2, 2016, Plaintiff filed her Fourth Amended Complaint naming several employees at the Woodbourne Correctional Facility, including Dr. Makram and Cunningham, as Defendants. (ECF No. 24.) On August 6, 2018, after Defendants were served and they filed a

---

[2] The Court extended Plaintiff's time to file her Fourth Amended Complaint to September 5, 2016. (ECF No. 23.)

motion to dismiss, the Court dismissed Plaintiff's Fourth Amendment Complaint with leave to re-plead certain claims. (ECF No. 72.)

On October 12, 2018, Plaintiff filed her 5AC, only re-pleading the instant claims against Dr. Makram and Cunningham. (ECF No. 76.) Defendants moved to dismiss, along with supporting papers, Plaintiff's 5AC on June 28, 2021. (ECF Nos. 93, 94.) However, Plaintiff never filed any opposition. By memorandum endorsement dated September 23, 2021, the Court deemed Defendants' motion fully submitted. (ECF No. 96.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff can defeat a motion to dismiss by alleging facts sufficient to state a claim that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A "plausible" complaint must raise more than a mere possibility that the defendant acted unlawfully. *Ashcroft v. Iqbal, 5*56 U.S. 662, 678 (2009). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a motion is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). A court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Courts must construe *pro se* pleadings in a particularly liberal fashion while interpreting *pro se* pleadings "to raise the strongest arguments they suggest." *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009); *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). However, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor,* 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). Thus, a court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. NY. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

In her 5AC, Plaintiff alleges (1) an Equal Protection claim based on the class of one theory, against Dr. Makram; (2) a deliberate indifference to serious medical needs claim, against Dr. Makram; and (3) a deliberate indifference claim against Cunningham. (5AC at 2.)

By their motion, Defendants seek to dismiss the instant action asserting that: (1) Plaintiff's claim against Cunningham is time-barred, and in the alternative, that Plaintiff fails to allege any facts indicating that Cunningham was personally involved in the 2014 incident; (2) Plaintiff fails to allege sufficient facts to support both her deliberate indifference and Equal Protection claims against Dr. Makram; and (3) the moving Defendants are, at a minimum, entitled to qualified immunity. (*See* Mot. at 3, 6, 7, 9, 10.) The Court addresses these arguments below.

### I.    Deliberate Indifference Claim Against Cunningham

Defendants first maintain that Plaintiff fails to state a claim against Cunningham because she fails to allege that he was personally involved in any alleged constitutional deprivation. (*See* Mot. at 6.) After due consideration, the Court agrees.

To hold a defendant liable for constitutional deprivation, Plaintiff must show a defendant's personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to

an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692–95 (1978). "A plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. An inmate must demonstrate "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Where a Defendant, like Cunningham, occupies a supervisory role, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon*, 720 F.3d at 138–39.

Here, the Court is of the view that Plaintiff fails to allege any facts showing how Cunningham was personally involved in the events underlying her claims. Plaintiff broadly alleges that Cunningham participated in the constitutional violations of her Eighth and Fourteenth Amendment rights by denying her grievances dated June 16 and August 28, 2014. (5AC ¶ 30.) Specifically, she makes conclusory allegations that Cunningham failed to provide relief and remedy for her medical concerns, failed to properly personally investigate the grievances, and failed to personally address the inappropriate comments directed toward her gender identity. (5AC ¶¶ 30–32.)

As such, even when drawing all inferences in her favor, Plaintiff alleges that Cunningham's participation here—at best—consists solely of affirming the denial of her grievances, which by itself fails to demonstrate "more than the linkage in the prison chain of command." *See Smart v. Annucci*, No. 19-CV-7908 (CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [the defendants] failed to act on Plaintiff's complaints . . . cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'") (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 615 (2d Cir. 2020)); *Rivera v. Bloomberg*, No. 11-CV-629, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) ("Even if the [c]omplaints could be read to suggest that [the] [c]ommissioner . . . failed to act, a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring"). Thus, Plaintiff fails to sufficiently allege that Cunningham was personally involved in any purported constitutional violations.

Accordingly, the Court dismisses Plaintiff's claim against Cunningham for lack of personal involvement.[3]

## II.   Deliberate Indifference Claim Against Dr. Makram

Next, Defendants argue that Plaintiff fails to state a deliberate indifference claim against Dr. Makram because her allegations cannot satisfy either the objective or the subjective components of such type of claim. (*See* Mot. at 8.) The Court agrees.

To sustain a claim of deliberate indifference to adequate medical care, a plaintiff must allege that (1) objectively, the deprivation of adequate medical care was sufficiently serious, and

---

[3] Because the Court has dismissed Plaintiff's claim against Cunningham for lack of personal involvement, and will do so with prejudice as explained *infra*, the Court need not address Defendants' argument that Plaintiff's claim against Cunningham is time-barred.

(2) subjectively, defendants acted with deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Salahuddin v. Goord,* 467 F.3d 263, 279–81 (2d Cir. 2006). The objective component requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)*; Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (per curiam).

On the other hand, the subjective component requires that the official charged with deliberate indifference must act with a "sufficiently culpable state of mind." *See Wilson v. Setter,* 501 U.S. 294, 298 (1991). A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Here, even when liberally construing the allegations in her favor, Plaintiff still fails to allege sufficient facts establishing the objective and subjective components of a deliberate indifference claim. First, regarding the objective component, Plaintiff fails to sufficiently allege that her medical issues were a condition of urgency, one that may produce death, degeneration, or extreme pain. For instance, Plaintiff alleges that Dr. Makram's conduct caused her to suffer weight loss, severe anxiety, mental anguish and duress. (5AC ¶¶ 10, 19.) However, Plaintiff herself alleges that these resulted from her feeling that she was forced to choose between missing meals while remaining in her housing unit or attending meals and being subjected to humiliation and embarrassment. (*Id.* ¶ 10.) Plaintiff's claims do not rise to the requisite level to satisfy the objective prong. *Compare Mandate v. Coughlin*, 920 F. Supp. 342, 355 (E.D.N.Y. 1996) (deeming

the objective prong satisfied where defendants failed for over a year to give the plaintiff a diet prescribed to aid in his recovery from abdominal surgery), *and Jones v. Avanzato*, No. 14 Civ. 2044 (NSR), 2016 WL 183565, at *5 (S.D.N.Y. Jan. 13, 2016) (concluding that a delay in chemotherapy that advanced the plaintiff's renal failure satisfied the objective prong), *with Sloane v. Borawski*, 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) ("broken ribs, an ankle fracture and a lower right-side back injury" not sufficiently serious to meet objective prong), *and Gonzalez v. Greifinger*, 95 CIV. 7932 (RWS), 1997 WL 732446 (S.D.N.Y. Nov. 25, 1997) (finding that an eleven month delay in surgery for a hernia, followed by a surgery that resulted in complications, failed to meet the sufficiently serious standard).

Plaintiff also fails to plead sufficient facts to establish the subjective component of a deliberate indifference claim. Even when drawing all inferences in her favor, Plaintiff fails to allege how Dr. Makram was actually aware of a substantial risk that serious harm will result. As Defendants correctly point out, Plaintiff's allegations regarding Dr. Makram's "failure to act" or "take any steps to address" Plaintiff's medical concerns at most may constitute negligence. (*See* Mot. at 8.) However, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill,* 657 F.3d at 123 (quoting *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation omitted); *see also Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976) (noting that unintentional failure to provide adequate medical care does not equate to "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind") (quotations omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (noting "negligent malpractice do[es] not state a claim of deliberate indifference"); *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation"). Hence, Plaintiff's allegations are insufficient to establish the subjective component of her deliberate indifference claim against Dr. Makram.

Finally, as Defendants contend, Plaintiff's allegations about the failure to provide a feed-in cell permit appears to be only a debate as to the correct course of treatment. (*See* Mot. at 9.) As such, to the extent Plaintiff alleges that Dr. Makram failed to act or take steps to address her medical concerns pertain to her desire for a feed-in cell permit (5AC ¶¶ 25–26), those claims still fail to amount to deliberate indifference on the part of Dr. Makram.

Inmates are entitled to adequate medical care while in prison; however, "[t]he prisoner's right is to medical care—not the type or scope of medical care which he personally desires . . . [thus,] a difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Gonzales v. Wright*, 665 F. Supp. 2d 334, 347 (S.D.N.Y. 2009) (quoting *U.S. ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970)). Moreover, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *See Sonds v. St. Barnabas Hosp. Correctional Health Sys.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) ("differences in opinion between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's "serious" medical needs").

Accordingly, the Court dismisses Plaintiff's deliberate indifference claim against Dr. Makram.

### III.   Equal Protection Claim Against Dr. Makram

Lastly, Defendants contend that Plaintiff fails to sufficiently allege an Equal Protection Claim grounded on a class of one theory based on Plaintiff's gender identity. (*See* Mot. at 9.) The Court agrees.

"A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). A plaintiff must show an "extremely high degree of similarity" between herself and any offered comparators to establish an inference that plaintiff was "intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006). Thus, to state a valid class-of-one claim, a plaintiff must assert that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.*

Here, Plaintiff's allegation that Dr. Makram treated her in a manner that was different from other similarly situated inmates such that it constituted a violation of Plaintiff's rights as a singular class under the Fourteenth Amendment is meritless. Nowhere in the 5AC does Plaintiff allege any facts pertaining to comparators or other similarly situated inmates. *See Banks v. Cnty. of Westchester*, 168 F. Supp. 3d 682, 696 (S.D.N.Y. 2016) (dismissal proper in absence of allegations of "any meaningful comments, actions, or examples of similarly-situated persons outside of [his]

protected class being treated differently"). And insofar as Plaintiff is attempting to allege inmates, solely by virtue of their status, are members of a protected class, such a claim fails. *See Randolph v. DOCCS*, No. 17-CV-0700 (NSR), 2018 WL 4374006, at *5 (S.D.N.Y. Sept. 13, 2018) (noting that inmates are not a protected class).

Accordingly, the Court dismisses Plaintiff's Equal Protection claim against Dr. Makram.[4]

## IV.    Leave to Amend

*Pro se* plaintiffs are generally allowed an opportunity to amend their complaint prior to dismissal with prejudice. *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a *pro se* litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, No. 12-CV-0053, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). However, this Court has already afforded Plaintiff numerous opportunities to amend her complaint. After multiple futile attempts, the circumstances do not warrant the granting of another opportunity to amend.

---

[4] Because the Court has already dismissed Plaintiff's claims for failure to state a claim, the Court need not address Defendants' arguments on qualified immunity.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DISMISSES Plaintiff's 5AC in its entirety with prejudice. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 93, to terminate the action, to mail a copy of this Opinion and Order to Plaintiff's last known address and to show service on the docket.

Dated:  June 27, 2022                                     SO ORDERED:
        White Plains, New York

_____
        NELSON S. ROMÁN
        United States District Judge